OPINION
Yvette Griffin, mother of Davion and Devonte Griffin, has appealed the decision of the juvenile court granting permanent custody of the two children to Montgomery County Children Services ("MCCS"). On May 15, 1998, MCCS filed a dependency complaint for Davion and a dependency and abuse complaint for Devonte. Soon thereafter, interim temporary custody was granted to MCCS. In November of that year, MCCS filed a motion for permanent custody of both children. Over a year later, a hearing was held to determine permanent custody. As a result, the magistrate found it would be in the best interest of the children for MCCS to obtain permanent custody. The trial court adopted this decision.
Davion and Devonte, ages six and five at the time of this opinion, were removed from Griffin's care in May of 1997 and placed with their maternal grandmother, Janice Lasley. After a few months, they were also removed from her home due to an unexplained injury to Devonte. At that time, they were placed together in foster care. Devonte's father is believed to be deceased, and the whereabouts of Davion's father are unknown. The record contains affidavits that Davion's father could not be located with reasonable diligence, and service was completed by publication. Counsel was appointed to represent Davion's father at the hearing, but the father did not appear. Additionally, the children were represented by counsel, who also acted as guardian ad litem.
In August of 1997, MCCS developed a case plan involving four overall objectives for Griffin to accomplish in order to regain custody of her children. These objectives were (1) to seek treatment for her substance abuse problem to become and remain drug-free; (2) to obtain a psychological evaluation and take parenting classes; (3) to refrain from criminal activity following incarcerations for various charges and probation violations; (4) to have consistent visitation with the children during which she would be the children's primary caregiver.
To facilitate these objectives, MCCS first referred Griffin to Crisis Care to receive drug treatment and counseling. However, she failed to attend. Griffin did begin the Born Free Program at Miami Valley Hospital as part of her probation, but she was unable to complete the program because she tested positive for cocaine and was reincarcerated for a probation violation. Additionally, Griffin began a boot camp program in prison, but was not permitted to complete it because she committed institutional violations. After her release from prison in the summer of 1999, MCCS referred Griffin to the Sojourner's Program for treatment. She did attend the initial assessment, however, she never followed up. Griffin contends that the Sojourner Program rejected her due to the pending permanent custody motion. Nevertheless, she made no further attempts to enter any other treatment program.
Teresa Mosley, the MCCS caseworker assigned to Griffin's case, testified that Griffin failed to attend the first appointment for a psychological and parenting assessment. Thereafter, she was not referred again due to subsequent incarcerations, and her failure to complete her first objective of maintaining sobriety. Mosley explained that MCCS does not refer individuals for these assessments until they are drug-free to ensure the individual is not altered during the assessment.
As to the third objective, it appeared as though Griffin had refrained from criminal activity from the time she was released from prison in July 1999 until the hearing in December 1999.
The final objective required Griffin to attend regular visitation with the children and be their primary caregiver during each visit. Although Griffin claims she attempted to schedule visits with her children while in jail and in prison, Mosley testified that she was never contacted by Griffin for visitation during this period of time. After she was released from prison, Griffin testified she had visited the children only twice in the five months that had passed. Mosley believed there had been four visits, including two birthday parties. During these visits, Griffin claimed that she fed and played with the children. On the other hand, Mosley observed that the children did not bond with their mother, and at times did not even recognize her. Griffin missed several scheduled visits allegedly due to lack of transportation, but she failed to request rescheduling.
There were only two relatives considered for legal custody of the boys, the maternal grandmother, Janice Lasley, and a maternal aunt, Kim Moore. Lasley was not approved because her husband had a history of domestic violence and criminal activity, and therefore posed a potential danger to the children. Moore was also not approved due to a shooting that occurred in her home. Regardless, neither of these individuals expressed an interest in obtaining legal custody at the time of the hearing. Mosley testified that the boys' present foster parent had expressed some interest in adopting the boys, as well as the adoptive and foster parent of their two younger siblings.
Prior to the permanent custody hearing, the guardian ad litem filed a report recommending that MCCS be awarded permanent custody of the children. Based on Griffin's failure to meet any of the objectives in her case plan and the absence of any relatives capable of taking legal custody of the children, the magistrate and the trial court found that permanent custody was in the best interest of the children. Griffin appeals this decision, raising the following assignments of error:
Effective assistance of counsel
Due diligence as applied to service of process.
 Due diligence as applied to case management by Children Services Board ("Children Services") and documentation of the same.
 Appointment of counsel for children separate from guardian ad litem.
 Other issues dealt with by the trial court's decision and judgment, filed 3 July 2000.
 I
In her first "issue," Griffin proposes that she may have had ineffective assistance of counsel at the permanent custody hearing. However, Griffin's own brief states: "[t]rial counsel was more than adequate," and "there may have been valid reasons" for failing to inquire further into certain topics.
The two-part test for ineffective assistance of counsel in criminal cases found in Strickland v. Washington (1984), 466 U.S. 668, also applies to permanent custody cases. In re King (Aug. 11, 1999), Adams App. No. 99CA 671, unreported, p. 4, citing Jones v. Lucas Cty. ChildrenServ. Bd. (1988), 46 Ohio App.3d 85, 86. In order to prevail on this claim, Griffin must show that counsel's performance was deficient, and that she was prejudiced thereby. However, there is a strong presumption that counsel's performance fell within the wide range of reasonably professional assistance. Id.
Griffin merely suggested that trial counsel "may have been more effective" if she had objected to conclusory statements regarding due diligence in the service of process on Davion's father, and if she had further explored reference to problems between the original caseworker and a supervisor. This "suggestion" does not rise to the level of ineffective assistance as contemplated by Strickland. Furthermore, Griffin does not even allege she was prejudiced by these actions. Accordingly, Griffin's first assignment of error is overruled.
 II
Griffin next argues that the trial court erred by not inquiring further into specifically what "diligent searches" MCCS completed in attempt to locate Davion's father before resorting to service by publication. Juv.R. 16(A) allows service by publication "when the residence of a party is unknown and cannot be ascertained with reasonable diligence." This court has addressed the specific situation where a mother challenges that a diligent search was not completed to serve process on the father for a permanent custody hearing. See In re Shackelford (May 22, 1990), Montgomery App. No. 11783, unreported, at pp. 5-6. In Shackelford, we held an affidavit stating that the address was unknown to affiant and could not be located with a reasonably diligent search was sufficient for service by publication. Further, and more importantly, we found the mother had no standing to raise this issue, as she could not demonstrate prejudice to herself. Id.
In this case, as in Shackelford, the alleged father had absolutely no contact with MCCS throughout the proceedings. In addition, there is no evidence in this case that Davion's father has ever had contact with his child. Consequently, there is very little chance that MCCS would award custody to Davion's father even if he were to appear. Moreover, counsel was appointed by the court to represent Davion's father, and he did not raise the issue of defective service at any time.
The record contains affidavits from MCCS that they were not aware of Davion's father's address and could not with reasonable diligence locate same. We find this sufficient to warrant service by publication. Further, the service made in this case met all the requirements of Juv.R. 16. Accordingly, Griffin's second assignment of error is overruled.
 III, V
We will address the third and fifth assignment of error together as they are related. In the fifth assignment, Griffin essentially alleges that the decision to grant permanent custody to MCCS was against the weight of the evidence. We disagree. Initially, we recognize that the trial court may only grant permanent custody to MCCS if it demonstrates by clear and convincing evidence that it is in the best interest of the child, and "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." See R.C. 2151.414(B)(1)(a). The trial court enjoys a great deal of discretion in making this determination due to the nature of the circumstances and the effect the result will have on the parties' lives.In re Awkal (1994), 95 Ohio App.3d 309, 316. Furthermore, the trial court is in a much better position to judge the credibility of the witnesses by viewing their demeanor, gestures and voice inflection during testimony, which cannot be conveyed through the printed transcript. Id. As a result, the appellate court will not reverse the decision absent an abuse of discretion, which implies that the decision is arbitrary, unreasonable or capricious. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Griffin argues that MCCS did not use due diligence in implementing and documenting her case plan. R.C. 2151.419(A) places the burden on MCCS to demonstrate that it "has made reasonable efforts to * * * eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." When a trial court makes a determination under this statute, it is required to make written findings of fact detailing the services provided by MCCS and why they were unsuccessful in returning the child home. R.C. 2151.419(B).
There was a great deal of testimony at the hearing about attempts made to accomplish Griffin's first objective under her case plan, entering and completing a substance abuse treatment program. Initially, MCCS referred Griffin to Crisis Care, where she failed to attend even the initial assessment. Soon thereafter, she was incarcerated, stifling MCCS's ability to refer her elsewhere. Griffin entered two different treatment programs through probation and prison, but completed neither. Upon release from prison, MCCS referred her to the Sojourner Program where she attended the initial session and then failed to follow-up. Griffin claims she was rejected from the program due to the pending permanent custody motion. On the contrary, Mosley testified that someone had attempted to contact Griffin about entering the program despite the motion, but Griffin could not be located. Regardless, Griffin never requested Mosley to refer her to an alternate treatment program.
Griffin's second objective was also not met because she failed to attend the initial psychological and parenting assessment. Thereafter, MCCS would not refer her again because she had not completed a substance abuse program. The third objective was still being monitored as it appeared that Griffin had not committed any crimes in the five months since she'd been released from prison.
As to the last objective, the trial court found that Griffin's visitation with the children was inconsistent at best. Although she claims she attempted to schedule visits while she was incarcerated, Mosley testified that she never received any such requests. After considering the facts and weighing the credibility of the witnesses, the trial court used its discretion to resolve this discrepancy in the testimony in favor of MCCS. See Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. Griffin missed many scheduled visitations claiming lack of transportation, but failed to reschedule any of them. During the few visits that did occur, although Griffin did provide much of the care for the children, they did not demonstrate any bond with their mother.
Based on the foregoing discussion, we agree that MCCS met its burden to demonstrate that it made reasonable efforts to allow Devonte and Davion to return safely home. Despite the efforts of MCCS, Griffin did not take any action to meet the objectives of her case plan. We find a statement made by the magistrate which appropriately summarizes this case: "Ms. Griffin claims [MCCS] has not done enough to help her. In reality, Ms. Griffin has done absolutely nothing to help herself." As a result, the record supported an award of permanent custody to MCCS. Accordingly, Griffin's third and fifth assignments of error are overruled.
 IV
Finally, Griffin argues that the trial court erred in allowing one individual to serve both as counsel for the children and guardian adlitem. R.C. 2151.281(H) allows a licensed attorney to serve as both guardian ad litem and counsel to the child if no conflict exists. See also Juv.R. 4(C). Because a guardian ad litem has a duty to recommend what is in the best interest of the child, and an attorney has a duty to zealously represent his client, it is easy to see that a conflict could arise any time a child's desire is not what is deemed in his best interest. See In re Howard (1997), 119 Ohio App.3d 201, 206, citing In reBaby Girl Baxter (1985), 17 Ohio St.3d 229, 232.
In the present case, there is no indication that the children have expressed any desire to return to their mother. In fact, there was testimony that at times the children did not even recognize Griffin during visitations. Because there is no evidence in this case of any conflict between the role of counsel for the children and guardian adlitem, we overrule Griffin's fourth assignment of error.
Judgment affirmed.
WOLFF, P.J., and YOUNG, J., concur.